## HUBERT v. SOUTHERN LIVE-STOCK INS. CO.

1. Where a policy of insurance upon a horse stipulates that the same shall be void in the event of a transfer of the property without the assent of the insurance company, a promise by the company or its agents to ratify such transfer upon certain conditions imposed upon the transferee, which were never complied with, does not amount to a waiver of the forfeiture.
2. There being no written transfer of the policy in this case by the assured, the holder thereof had no right to bring an action upon the same in his own name.
3. The court did not err in sustaining the certiorari and in rendering a final judgment in this case.

Argued December 13, 1897. — Decided January 20, 1898.

Action on insurance policy — certiorari. Before Judge Lumpkin. Fulton superior court. March term, 1897.

Charles Hubert sued the defendant company upon a policy of insurance upon the life of a horse, and obtained in a justice's court a verdict for $100. On certiorari the judge of the superior court ruled that the verdict was contrary to evidence and law, both upon the subject of liability, and as to the amount of the recovery; and thereupon rendered final judgment for the defendant. Plaintiff excepted.

The policy sued on was issued by the company to W. T. Justin, for one year beginning March 1, 1893. It stipulates, among other things, that it shall be void if the assured parts with, alienates, or sells his interest in the insured animal, or if any of the answers contained in the application upon which the policy was issued shall be found to be untrue; and that the company reserves the right to cancel the policy or any part thereof by tendering to the assured the unearned premium, and the assured may cancel in case of sale, the defendant retaining the customary short rates for the time the policy has been in force. It further provides, that in case of loss the assured shall within three days give written notice to the company, stating the number of the policy and name of the animal, the date and cause of death, the name and address of attending veterinary, and at the request of the company, at any time within ninety days after the loss, consent to an appraisement by persons to be selected, and shall give under oath, upon blanks to be furnished by the company, such other information relating to the loss as the company may require. The following appears upon the policy: "In case of actual sale and transfer of title, leave being obtained, the form subjoined may be used, which should be executed at the time of transfer, and forward policy to company for its consent, with one dollar to pay for the same." The policy was transferred by Justin to Carlton & Smith on May 13, 1893, and the transfer was assented to by the company. In September, 1893, a swap was made between Carlton & Smith and the plaintiff, of the horse for a mule, plaintiff receiving $15 boot, and they agreeing that he should have the policy, but not delivering it to him until a few weeks later, when he returned and complained of the trade, and they gave him $20 more. They also gave him a note addressed to the secretary of the defendant company, in which it was stated that they had sold the horse to him, and asked the company to transfer the policy. Plaintiff carried the note to the company's secretary, who stated that he would cancel the policy but plaintiff understood the word "cancel" to mean "transfer." Plaintiff testified that the secretary, Dohme, said he would transfer the policy, but would

have to see the horse first and would go and see it, but did not do so.  Plaintiff waited a few days, and then took the horse to the secretary's office, but Dohme was absent.  Afterwards plaintiff went to the company's office, found that Cronheim had succeeded Dohme as secretary, told him what had been done, and requested him to transfer the policy.  He said he would willingly do so, but the horse would have to be examined by the company's veterinary, Dr. Jolly, and he would send Jolly to see the horse if plaintiff would tell him where it was.  Plaintiff said, "No, I will carry the horse to Dr. Jolly."  He went to see Jolly twice, but did not find him at his place.  Sometime after that the horse died, and a few weeks later plaintiff went to Cronheim and told him of this fact, and Cronheim said the company was liable but plaintiff had better get a lawyer to fix up the papers for him.  The company never offered to cancel the policy or return any of the premiums.  Plaintiff never offered to pay any transfer fee.  There was testimony that the value of the horse when plaintiff obtained it from Carlton & Smith was about $60.  Dohme testified, that when plaintiff brought him the note from Carlton & Smith, he told plaintiff he could not agree to the transfer until the one dollar transfer fee was paid and the horse could be examined; and offered to go and see the horse, asking where he could be seen.  Plaintiff replied, "I will bring the horse to your office."  He did not do this, so far as Dohme knew.  He devoted his entire time to the company's business, and was in the office nearly all the time.  Dohme never heard of any one trying to see him and failing to do so.  Plaintiff came another time, and did not bring the horse.  Dohme told him he had no insurance until the company agreed to the assignment of the policy.  Dohme did not want to cancel if he could help it.  Cronheim testified that he was elected secretary on December 23, 1893, and soon after that plaintiff called upon him and asked for the policy to be transferred to himself.  Cronheim would not agree to the transfer until the horse had been examined, and offered to send Dr. Jolly to see the horse, inquiring where he could be seen.  Plaintiff replied, "You need not do that.  I will bring the horse to him."  He was told where Jolly's place was, and stated

that he knew the place. Cronheim gave plaintiff a note asking Jolly to examine the horse. About three weeks thereafter plaintiff came to Cronheim's office and said the horse had died; whereupon Cronheim told him the policy was void. Jolly testified, that in December, 1893, and January, 1894, he was in and out of his office at all times in the day, and never went therefrom without some one being there to notify people where he was and when he would return. He never heard of any one trying to see him who failed to do so.

*Maddox & Terrell* and *E. T. Williams*, for plaintiff.
*J. B. Stewart* and *Palmer & Read*, for defendant.

SIMMONS, C. J. 1. One of the conditions of the policy of insurance upon which this suit was brought is, that the policy shall be void "if the assured parts with, alienates, or sells his interest in and to the insured animal." The evidence shows that there were two transfers of the horse which was insured. The first was reported to the agents of the insurance company, and a transfer of the policy to the vendee was ratified by them. The second sale was also reported to the company's agents, to whom the vendor wrote a note requesting that the policy be transferred to the vendee (the present plaintiff). There was no written transfer of the policy, and no tender of the fee which the company required before making a transfer to which its agents had agreed. The note above mentioned was taken by the vendee of the horse to the secretary of defendant company, and the latter stated that he would transfer the policy upon certain conditions, viz., an examination of the insured animal satisfactory to the company. The horse was never examined, and the failure to make the examination was in no way attributable to the fault or negligence of the agents of the company, nor was the policy ever transferred as requested. The policy was therefore rendered null and void by the sale of the insured animal, and there was nothing done by the company or its agents which can be construed as a waiver of this forfeiture of the policy. The agents of the company did not transfer the policy, nor did they agree unconditionally to do so. An agreement to transfer upon the performance by the policy-holder of a reasonable

condition, which was never in fact performed, can not amount to a waiver. In the absence of such waiver, the policy was avoided by the sale of the insured horse, and upon the death of the animal the owner could not maintain an action against the company upon such void policy. A statement of an agent of the company, made subsequently to the death of the animal, that the company was liable, did not render it so. It was a mere expression of opinion, and could not serve to change the legal status of the parties to each other. It may be well to note, also, that the plaintiff in this suit made no attempt to comply with the conditions of the policy which require the assured to make proofs of loss, etc. Even had he done so, however, he could have no right of action, as the policy was already forfeited and void.

2. The evidence shows that there was no written transfer of the policy to the present plaintiff. The policy was delivered to him with a note to the secretary of the insurance company, requesting the latter to make the transfer. He neither made the requested transfer nor agreed to do so. There being no transfer in writing, the title to the policy (conceding for the sake of the argument that it was valid and not forfeited by the sale of the insured animal) was not vested in the transferee. Civil Code, § 3077; *Turk* v. *Cook*, 63 *Ga.* 681; *Kirkland* v. *Dryfus & Rich*, ante, 127. This action having been brought by the plaintiff in his own name, and the evidence showing that he had not the legal title to the policy sued upon, it follows that a verdict in his favor was contrary to law.

3. Under the principles announced in the foregoing, the plaintiff could not recover against the defendant in this action, and the trial judge did not err either in sustaining the certiorari or in rendering final judgment in the case. The plaintiff had possession of a policy of insurance to which he had no legal title, and which had been, under its own conditions, forfeited. It is therefore clear, as matter of law, that another trial in the justice's court could not possibly result in a legal verdict in his favor. Under such circumstances the trial judge is not only empowered, but required, to render judgment finally disposing of the case. Civil Code, § 4652.

*Judgment affirmed. All the Justices concurring.*